# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRONTIER SUPPLY CHAIN SOLUTIONS, INC. | ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 07811 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| STREAMLINE TRANSPORT SOLUTIONS, LLC | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frontier Supply Chain Solutions, Inc. sued defendant Streamline Transport Solutions, LLC for indemnification under the Interstate Commerce Commission Termination Act after goods that Streamline agreed to transport for Frontier were stolen. Streamline contends that its liability was expressly limited by contract and therefore moves for partial judgment on the pleadings to cap Frontier's recovery at $2.00 per pound for the stolen goods. For the reasons that follow, the defendant's motion is denied.

## FACTS

Frontier is a Canadian corporation that provides, among other things, shipping and transportation services to its customers. In its complaint, Frontier alleges that it entered into an agreement with three companies to transport goods from the United States to Canada and issued three bills of lading for the goods. Frontier also alleges that it contracted with Streamline, a federally licensed motor carrier, to transport the goods. On November 16, 2012, Streamline picked up the goods from Frontier's warehouse in Itasca, Illinois, and took them to its facility. On November 18, 2012, Streamline discovered that the trailer containing the goods had been

stolen from its facility and notified Frontier shortly thereafter. Frontier sent a written notice to Streamline on November 22, 2012, demanding payment of $99,569.80—the actual value of the goods according to Frontier—as compensation for the stolen cargo. Frontier alleges that under the Carmack Amendment, § 14706 of the ICC Termination Act, it has the right of indemnification, as the "originating carrier." Frontier alleges that it has already compensated or agreed to compensate its customers for the full extent of the loss. Streamline refused to reimburse Frontier fully, and this lawsuit ensued.

Frontier attached to its complaint the three bills of lading that it issued for the goods and that it alleges were its "agreements" with its three shipping customers. Each bill of lading states that the goods were being transported from "Frontier SCS-USA" in Illinois to "Frontier SCS-Winnipeg" in Winnipeg, Canada. It identifies the goods and their weights. The weights listed in the bills of lading are 5,705 pounds, 2,591 pounds, and 148 pounds, respectively, which constitutes a total weight of 8,444 pounds. Each bill of lading also contains a statement that the maximum liability of the "carrier" is $2.00 per pound unless there is a declared value filled into the blank space provided. In each of the bills of lading, the area to declare a separate value for liability is blank; in none of the documents is a declared value provided. Both Frontier SCS and Streamline are listed as "shippers" on each of the bills of lading, and no entity is identified as the "carrier." Also, each bill of lading identifies Frontier's customer, listed as the "ACI/eManifest Shipper": Milwaukee Tool, Sleep Innovations, and Jayco RV.

Frontier also attached to its complaint a "load confirmation sheet," which it alleges "evidence[s]" it contract with Streamline. The load confirmation sheet designates Frontier as the "shipper" and Streamline as the "carrier" and designates the location where Streamline was to

pick up and drop off the goods. It also states: "Carrier accepts full liability from pick up to delivery for temperature control, piece count, damage, and on-time service."

## DISCUSSION

Streamline argues that it "is entitled to partial judgment on the pleadings limiting its potential liability in this matter to a maximum of $16,888 because the bills of lading contain enforceable limitation of liability clauses which limit its liability to $2.00 per pound for a total of 8,444 pounds." Mem., Dkt. # 20 at 4. Frontier contends there are materials issues of fact to be resolved, precluding entry of judgment on the pleadings.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion will be granted "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). With motions for judgment on the pleadings, as with motions to dismiss, the court must "tak[e] all well-pled allegations as true and draw[] all reasonable inferences" in the plaintiff's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

"In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir. 2004). Where an exhibit and the complaint conflict, the exhibit controls; furthermore, the court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (explained in context of motion to dismiss).

Here, the motion for judgment on the pleadings must be denied because the pleadings and exhibits alone do not allow the Court to conclude as a matter of law that Frontier and Streamline agreed that Streamline's liability would be capped at $2.00 per pound.

The Carmack Amendment, 49 U.S.C. § 14706, "provides shippers with the statutory right to recover for actual losses to their property caused by carriers." *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 369 (7th Cir. 2000). The Seventh Circuit has held that in order for a carrier to successfully limit its liability under the Carmack Amendment, it must: "([1]) obtain the shipper's agreement as to a choice of liability; ([2]) give the shipper a reasonable opportunity to choose between two or more levels of liability; and ([3]) issue a receipt or bill of lading prior to moving the shipment." *Nipponkoa Ins. Co., Ltd. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012).

Streamline contends that the bills of lading themselves conclusively establish the required elements. According to Streamline, there is no question that bills of lading were issued prior to shipment, and the bills of lading require the shipper's agreement to the limitation and allow the shipper to choose a level of liability by declaring a value or acceding to the default level of $2.00 per pound. Streamline does not discuss how the requirement that the *carrier* "issue a receipt or bill of lading" is affected by the uncontested fact that, in this case, the only bills of lading were issued by Frontier, not the party to seeking to limit its liability.

In any event, Streamline's motion fails because the bills of lading do not establish conclusively an agreement between Streamline and Frontier to limit Streamline's liability. *See Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 692 (7th Cir. 1993) (explaining that judgment on the pleadings was improper because contractual ambiguity "is a question of fact that must be resolved by the trier of fact").

4

First, the identity of the "carrier" is ambiguous without elucidation beyond the complaint and exhibits.[1] Streamline relies exclusively on the bills of lading to make its case, but the bills of lading do not themselves name any "carrier" despite limiting the liability of the "carrier" to $2.00 per pound unless a declared value is entered. Frontier and Streamline each are listed on these documents as "shippers," not "carriers." On the load confirmation sheet, a separate document, Streamline is designated as the "carrier," but that is the same document that also states that Streamline's liability is unlimited, and, as discussed below, Streamline gives the Court no reason to believe the bills of lading's limitation applies to the "carrier" as defined on the load confirmation sheet.[2] Finally, the complaint alleges that Frontier is the "originating carrier" (whereas Streamline is "a federally licensed motor carrier"). That factual allegation is not directly contradicted by any exhibit to the complaint, although certainly both the designation of Frontier as "shipper" on the bills of lading and the load confirmation sheet's designation of Streamline as "carrier" introduce ambiguity as to the legal positions of Frontier and Streamline with respect to the cargo.

Second, it is also unclear whether the bills of lading, on which Streamline exclusively relies for its argument that its liability was limited, constitute a contract between Streamline and Frontier that Streamline is entitled to enforce. In its complaint, Frontier asserts that the bills of lading reflect its agreement with its three shipping customers—not with Streamline—and that only the load confirmation sheet evidences its contract with Streamline. The three customers are listed in the bills of lading as the "ACI/eManifest Shipper[s]." If, as the complaint alleges, the

---

[1] The parties have not argued that the identity of the "carrier" for purposes of this question is defined by the statute or its licensing scheme.

[2] From the face of the documents, the load confirmation sheet was prepared on October 15, 2012, while the bills of ladings are dated November 16, 2012. This month-long gap further confounds the question of how the two documents fit together—as a unified whole, as a contract with a later written modification, or in some other fashion.

bills of lading were contracts between Frontier and its three customers, then Frontier plausibly could be the "carrier" for purposes of those documents, and Streamline would have to show some legal standing to enforce the contract as a third party.[3] Even if, contrary to the complaint's allegation, the bills of lading are a contract with Streamline,[4] there remains the ambiguity over whether Streamline is the "carrier" referred to in those documents.

Finally, as Frontier argues, the bills of lading are at least potentially in conflict with the load confirmation sheet, introducing another potential ambiguity. Even assuming that Streamline is the "carrier" for purposes of the bills of lading, the limited liability for the carrier there might, but does not necessarily, conflict with the unlimited liability for the carrier set forth in the load confirmation sheet dated a month earlier. According to the complaint, the load confirmation sheet is Frontier's only contract with Streamline, and Frontier argues that "full liability" requires Streamline to pay the full amount of actual damages from the lost goods which it alleges to be $99,569.80. Streamline, on the other hand, argues that because it can enforce the limitation of liability in the bills of lading, the full liability clause in the load confirmation sheet requires simply that it pay the full extent of its *limited* liability—$16,888 ($2.00 per pound). In other words, Streamline suggests a way to read the documents consistently. That interpretation is plausible, but it contradicts the allegations in the complaint, and the documents themselves do not provide sufficient guidance on their face. Therefore, the Court cannot accept Streamline's interpretation at the pleadings stage.

---

[3] If that is the case, however, then Frontier might have been able to assert the liability limitation against its three clients. Frontier indicates that it has agreed to pay its clients the full value of the stolen cargo, but that raises the question of whether Frontier is entitled to full reimbursement from Streamline if it waived its own right to assert a liability limitation against its clients.

[4] The bills of lading each are stamped with what appears to be a Streamline barcode, which might indicate some involvement for Streamline with respect to those documents, but the significance, if any, of the barcode is not explained by the parties.

Because the identities of the "carrier" and the parties to the bills of lading are ambiguous, and it is unclear how the bills of lading and the load confirmation sheet relate, at present it cannot be determined as a matter of law that Streamline's liability is capped at $2.00 per pound. Given the ambiguity or at least potential ambiguity, the non-moving party has the right to present extrinsic evidence regarding the meaning of the contested terms. *See Craigs*, 12 F.3d at 692. Therefore, the motion for judgment on the pleadings is denied.

Date: July 25, 2014

John J. Tharp, Jr.
United States District Judge